United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| TOD PATRICK CRAVENS,<br><br>        Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br><br>        Defendant. | Case No. 13-cv-00070-NJV<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; AND REMANDING CASE FOR FURTHER PROCEEDINGS**<br><br>Re: Dkt. Nos. 19, 23 |

In April 2010, Plaintiff Tod Patrick Cravens applied for Supplemental Security Income ("SSI") disability benefits, claiming he was unable to work because of an adjustment disorder with anxiety, paranoia and startle response, and hepatitis C. *See* Administrative Record ("AR") 87. His claim was denied initially and on reconsideration. AR at 87-88, 95-96. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on August 22, 2011. AR 30-46. The ALJ denied benefits, and the Social Security Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. AR 1. Plaintiff timely filed his appeal of the Commissioner's final decision to this court. All parties have consented to this court's jurisdiction. *See* Doc. Nos. 6 & 8. The court therefore has jurisdiction to decide the parties' cross-motions for summary judgment.

For the reasons stated below, the court will grant in part Plaintiff's motion, grant in part Defendant's motion, and remand the case for further proceedings consistent with this opinion.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be

conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## BACKGROUND

**A. Summary of Medical Evidence Relevant to Plaintiff's Appeal.**

Plaintiff has been incarcerated for most of his adult life. AR 211. Prison mental health professionals referred him for counseling and evaluation, but he refused to pursue treatment due to the stigma attached to mental health issues in prison. AR 209, 396-98. Plaintiff's condition was sufficiently severe to warrant protective custody and transfer to a medical facility. AR 263-264 (1997 order acknowledging that Plaintiff suffered from PTSD, that prison medical staff's efforts to ameliorate condition through medication were unsuccessful, and recommending placement in medical institution specializing in treatment for PTSD).

In March 2010, Plaintiff was released after serving 14 years in prison. Jeannie Patterson, a licensed social worker, evaluated Plaintiff in April 2010. AR 306-311. Patterson diagnosed Plaintiff with a Mood Disorder and found that his global assessment of functioning score ("GAF")[1] was 48. AR 308; *see also* AR 310 (diagnosing adjustment disorder, anxiety and

---

[1] "The GAF is a numeric scale ranging from zero to one hundred, which is used to rate social, occupational and psychological functioning 'on a hypothetical continuum of mental health-illness.' *Diagnostic and Statistical Manual of Mental Disorders*, 32 (4th ed. Am. Psychiatric Ass'n. 1994) ('DSM-IV'). The DSM-IV states that Axis V . . . is 'for reporting the clinician's judgment of the individual's overall level of functioning.'" *Nguyen v. Astrue*, 179 Soc. Sec. Rep. Serv. 198, *61 (N.D. Cal. 2012). A GAF of 50 "reflects a serious limitation on a claimant's

2

paranoia, and noting "R/O PTSD"). Patterson referred Plaintiff to Parole Service specifically to explore mental health treatment. AR 308. Plaintiff's case workers also evaluated him in April 2010 and diagnosed "Anxiety Disorder NOS"[2] and found that his GAF was 50. AR 395. He was assigned to Dr. Michelle Martin, who prescribed Zoloft to help Plaintiff's mental health condition and began following Plaintiff on a monthly basis. AR 370. On April 14, 2010, Plaintiff had a telemedicine appointment with Dr. Martin, who diagnosed Plaintiff with depression NOS and found that his GAF was 64. AR 393. On July 8, 2010, Dr. Martin had another phone appointment with Plaintiff and again noted a diagnosis of depression NOS and a GAF of 63. AR 385.

On July 25, 2010, Plaintiff was examined by an SSA consulting psychologist, Dr. Richard Palmer. AR 314-318. Dr. Palmer performed a comprehensive psychiatric evaluation of Plaintiff and diagnosed him as suffering from Generalized Anxiety disorder and Antisocial Personality disorder, and found that Plaintiff had a GAF of 55. AR 318. Dr. Palmer evaluated the impact of Plaintiff's mental health issues on his ability to function in a work-environment:

> Mr. Cravens's anxiety is intense and longstanding and he is receiving only minimal treatment at present. He does present as sincerely motivated to make some changes and develop an entirely different kind of lifestyle, but his task is formidable. At this point, the most likely prognosis for 12-24 months in the future is that he continues at or slightly above his current mild to moderate level of impairment. . . .
>
> Mr. Cravens has the ability to perform simple and repetitive tasks as well as more detailed and complex tasks. Mr. Cravens would not need special instruction in order to perform work activities confidently.
>
> He is someone who most probably would have considerable difficulty interacting with coworkers and the public or accepting supervisory instruction.
>
> At this point, psychological factors make him unlikely to manage regular workplace attendance, complete normal workweeks without interruptions, to deal with workplace stressors. The most probable outcome of job placement would be conflicts with coworkers resulting in dismissal or quitting.

AR 318.

---

ability to perform basic life tasks." *Id.* Limitations increase as the GAF score decreases.
[2] "NOS" means a condition is "not otherwise specified" and does not fit any specific diagnosis.

On August 27, 2010, an SSA *non-examining* medical consultant completed a Psychiatric Revue Technique ("PRT") form for Plaintiff. AR 331-344. The SSA lists nine diagnostic categories of mental disorders in Section 12 of its disability listings ("listed mental disorders"). *See* 20 C.F.R. Pt. 404, Sub. P., Appdx. 1, § 12. The SSA listings for most of these mental disorders "consist[] of a statement describing the disorder(s) addressed by the listing, paragraph A criteria (a set of medical findings), and paragraph B criteria (a set of impairment-related functional limitations)." *Id*. "The criteria in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations in paragraphs B and C must be the result of the mental disorder described in the diagnostic description, that is manifested by the medical findings in paragraph A." *Id*. In the PRT, the consultant assessed Cravens under SSA listings 12.06 (anxiety disorders) and 12.08 (personality disorders). She did not assess Plaintiff under SSA listing 12.04 (affective disorders). She found that Cravens had two medically determinable impairments, but that they did not "precisely satisfy the diagnostic criteria" for either listing. Under listing 12.06, the SSA consultant found that Cravens had "anxiety D/O, NOS" (AR 336), and under listing 12.08, found that Cravens had "anti-social personality D/O" (AR 338). She then evaluated the degree of limitation Cravens experienced under the paragraph B criteria for both listings and found that he had no restrictions in his activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. AR 341. She also indicated that Plaintiff did not meet the paragraph C criteria either for listing 12.04 or 12.06. AR 342.

Having indicated that an RFC assessment was necessary (AR 331), the consultant completed a Mental Residual Functional Capacity Assessment form for Plaintiff (AR 327-330). The consultant found that Plaintiff was "not significantly limited" in the ability to maintain regular attendance, the ability to sustain an ordinary routine without special supervision, the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to get along with coworkers or peers, the ability to maintain socially appropriate behavior, or the ability to respond appropriately to changes in the work setting; was moderately limited in the ability to work

in coordination with or proximity to others, the ability to complete a normal workday or workweek without interruptions from psychologically based symptoms; and was markedly limited only in his ability to interact appropriately with the general public. AR 327-328. She concluded that Plaintiff "may experience some interruption from symptoms of anxiety in the context of possible maladaptive personality traits, [but] he retains adequate capacity to sustain a normal workday and workweek;" that Plaintiff was "capable of appropriate social interact with supervisors and co-workers but may not be capable of handling a job that requires close interaction with the public;" and that Plaintiff's "reduced stress tolerance may interfere somewhat with his adaptability, but, overall, he appears capable of adapting to normal changes within a work environment." AR 329. In assessing Plaintiff's RFC, the consultant noted the following: "CDC record show[s] claimant NOT having a history of mental health [treatment] during incarceration . . . . Claimant not fully credible, endorsing all manner of problems, yet w/out any significant treatment history. [Consultative examiner] provider projects significant deficits that would interfere w[ith] claimant's ability to work. This is contra[dict]ed by this claimant having spen[t] a very long time in jail [without] any need [for mental health] services." AR 343.

In October 2010, Dr. Martin assessed Plaintiff's GAF at 64 in the course of a telemedicine appointment. AR 372.

In March 2011, Plaintiff was given a "same day service evaluation" by the County of Humboldt Health & Human Services, Mental Health Branch ("MHB") and diagnosed as suffering from Anxiety Disorders. AR 518-590. He was diagnosed with PTSD and a GAF of 50. AR 519. The following month, Plaintiff received an "assessment" from MHB. AR 509-513. He was diagnosed with PTSD and found to have a GAF of 41. AR 512. He was approved for individual therapy, group therapy, and medication. AR 505-507.

In August 2011, Plaintiff attended a face-to-face medical appointment with Dr. Goldberger to obtain a refill of his Zoloft prescription. AR 534. Dr. Goldberger noted that Plaintiff reported sleeping 6-9 hours a night; was "feeling 'alright' and present[ed] no complaint;" was "alert, cooperative;" that his effect was stable; his thought process coherent; and his insight and judgment were both "fair." AR 534. Dr. Goldberger diagnosed Plaintiff as suffering from depression NOS

1   and personality disorder NOS with borderline traits. AR 534. Dr. Golberger found that Plaintiff's

2   GAF was 45. AR 534.

### B. The Five Step Sequential Analysis for Evaluating Disability Claims.

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

The Social Security Regulations set out a five-step sequential analysis for evaluating a claimant's application for SSI disability benefits. *See* 20 C.F.R. § 416.920(a)(4); *Tackett*, 180 F.3d at 1098:

In the first step, the ALJ must determine whether the claimant is currently engaged in substantially gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If so, the claim is denied.

The second step requires the ALJ to determine whether the claimant has a "severe" impairment which significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(a)(4)(ii), (c). If the ALJ concludes that the claimant does not have a "severe" impairment, the claimant is not "disabled" and his claim is denied. *Id*.

If the claimant does have a "severe" impairment, the third step requires the ALJ to determine whether the impairment meets or equals the criteria of an impairment listed in the relevant regulation. 20 C.F.R. § 404, Subpt. P, App. 1; 20 C.F.R. § 416.920(a)(4)(iii) (the "listings" or the "listed impairments"). Where the impairment at issue involves a claimant's mental health, the ALJ must follow a special technique to evaluate the claimant's symptoms and rate his functional limitations. 20 C.F.R. § 416.920a. The ALJ must apply this special technique to each impairment and combination of impairments to determine if the claimant's impairments meet any of the listed impairments.

Before proceeding to the fourth step, the ALJ must evaluate the claimant's residual

functional capacity. Then, in the fourth step, the ALJ must determine whether the claimant has sufficient residual functional capacity to perform his past work. 20 C.F.R § 416.920(a)(4)(iv). If so, the claimant is not "disabled" and the claim must be denied. *Id*.

If the claimant proves that he cannot perform past work, the burden shifts to the commissioner in the fifth step of the analysis to establish that the claimant can perform other substantial gainful work. 20 C.F.R. § 416.920(a)(4)(v). If the ALJ fails to meet this burden, the claimant must be found disabled. *Id*. If a claimant is found to be "disabled" or "not disabled" at any of these steps, the ALJ need not consider the remaining steps. 20 C.F.R. § 416.920(a)(4).

## C. The ALJ's Findings.

Because Plaintiff claims disability based on a mental impairment, the ALJ must apply a special framework to evaluate his claim. *See* 20 C.F.R § 416.920a. In order to determine whether Plaintiff's impairments meet or medically equal the severity of any listed mental disorder, the ALJ must determine whether Plaintiff meets the criteria listed under paragraphs A and B, and where appropriate, C, of each applicable listed mental disorder. *See supra* at 4.

Here, the ALJ found that Plaintiff met the criteria under paragraph A for three severe impairments: PTSD, generalized anxiety disorder and depressive disorder. AR 35-36. The ALJ analyzed only whether these impairments met or medically equaled the paragraph B and paragraph C criteria for listing 12.04 (affective disorders). She found that Cravens' mental impairments did not meet either the paragraph " or C criteria under listing 12.04. The ALJ proceeded to analyze Cravens' residual functional capacity and found that he was limited to "simple unskilled work with preclusion from working with the general public or tandem work with a co-worker." AR 39. The ALJ arrived at this limitation by giving "great weight to the December 2010 opinion of the DDS medical *examiner* (exhibit 12F)." *Id*. (emphasis added). The undersigned requested further briefing because he could not locate this opinion in the AR. *See* Doc. No. 26. In her response, Defendant admitted that "there is no December 2010 opinion from a DDS *physician*" in the record. Doc. No. 30 (emphasis added). Defendant posited that "the ALJ may have inadvertently misstated the date and location of the DDS physician opinion in the record," and directs the court to the opinions of two other DDS non-examining physicians in the record. Doc. No. 30 at 2. The

7

ALJ also gave "significant weight" to the opinion of Dr. Palmer, the psychological consultative evaluator. She found, however, that the extent of Dr. Palmer's assessment of Plaintiff's difficulties with other people was not supported by the record because Plaintiff attended church, attended AA meetings regularly and often, and interacted with roommates reasonably well. The ALJ also noted that Plaintiff underwent a mental status exam in August 2011 and tested "all within normal ranges." AR 39. The ALJ gave little weight to the multiple certifications of incapacity for work because they were completed by non-acceptable medical sources and did not offer a functional assessment of Plaintiff's capacity for work, or provide a medical rationale for their opinions. *Id*.

Based on the testimony of a vocational expert, the ALJ concluded that someone with Plaintiff's RFC could perform work that exists in significant numbers in the national economy and therefore was not disabled. AR 40.

## DISCUSSION

### A. The Parties' Contentions On Appeal.

Plaintiff asks the court to reverse the ALJ's denial of SSI disability benefits on two grounds. First, he argues that the ALJ erred in failing to evaluate properly at Step Three whether his conditions met or medically equaled the severity of the mental impairments listed at 12.06 (anxiety disorders) and 12.08 (personality disorders). Second, he argues that the ALJ erred at Step Five in failing to confirm whether the testimony of the vocational expert ("VE") conflicted with the Dictionary of Occupational Titles ("DOT").

In her opposition and cross-motion for summary judgment, Defendant contends that the ALJ properly evaluated whether Cravens met or equaled any of the mental impairments listed at 12.00 and that substantial evidence supports the ALJ's findings that Plaintiff's impairments did not meet or equal the paragraph B criteria for these listings. Defendant also argues that any error in the ALJ's failure to ask the VE whether his testimony conflicted with the DOT was harmless.

### B. The ALJ's Decision At Step Three Is Not Supported By Substantial Evidence.

The ALJ erred in placing "great weight" on a non-existent record, the December 2010 opinion from a "DDS examining physician" (AR 39). As an initial matter, the court cannot accept

Defendant's invitation to assume that the ALJ "inadvertently misstated the date and location of" another DDS physician's opinion in the AR. *See* Doc. No. 30 (suggesting that the ALJ may have been referring to exhibits 8/F, 9/F or 13/F). "Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ -- not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Social Sec.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947)). In fact, substantive discrepancies between the ALJ's decision here and the opinions identified by Defendant suggest that the ALJ may have been reviewing the file of another claimant altogether. For example, the ALJ's analysis of Plaintiff's paragraph B criteria is based on listing 12.04, while the DDS physician analyzed whether Plaintiff met the criteria for listings 12.06 and 12.08. *See* AR 341. Moreover, the ALJ does not adopt the findings of the DDS physician regarding the paragraph B criteria, and does not explain why she deviates from the opinion. *Compare* AR 36 (Plaintiff has mild restrictions in activities of daily living), *with* AR 341 (Plaintiff has no restrictions). Furthermore, the ALJ does not reference the content of these opinions in her RFC analysis. *See* AR 37-39. The court disagrees with Defendant's assessment that the ALJ merely "misstated" the date and location of the DDS physician opinion.

Second, assuming *arguendo* that the ALJ did merely "misstate" the date and location of an opinion by another DDS physician, the court disagrees that any error is harmless. The opinions are not "consistent with" and do not "support" the ALJ's decision. *See* Doc. No. 30 at 2. The DDS physicians evaluated Plaintiff under listings that the ALJ did not address in her decision, and did not evaluate Plaintiff under the listing that the ALJ did address. In addition, the opinions of the two other DDS physicians that Defendant identifies in the record are not opinions by *examining* physicians, but by non-examining consultants who reached their conclusions based on the evidence in Plaintiff's file. *See* AR 327, 343, 419-21. If the ALJ did rely on the opinions of these non-examining physicians, she erred by placing greater weight on those opinions than on the opinion of Dr. Palmer. "Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do

9

1  not treat the claimant (examining physicians); and (3) those who neither examine nor treat the
2  claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Indeed,
3  the report of a non-examining physician cannot by itself constitute substantial evidence that
4  justifies rejection of the opinion of either an examining physician or a treating physician. *Lester*,
5  81 F.3d at 831 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990)); *see also*
6  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148-49 (9th Cir. 2001). Assuming that the ALJ did, in
7  fact, mean to write that she relied on the opinion of one of these non-examining physicians, it
8  would have been error to use the opinion to reject Dr. Palmer's opinion. Dr. Palmer opined, in no
9  uncertain terms, that Plaintiffs' impairments precluded him from maintaining gainful employment.
10 *See supra* at 3 ("At this point, psychological factors make him unlikely to manage regular
11 workplace attendance, complete normal workweeks without interruptions, to deal with workplace
12 stressors. The most probable outcome of job placement would be conflicts with coworkers
13 resulting in dismissal or quitting"). The other reasons the ALJ offers to reject in part Dr. Palmer's
14 opinion (AR 39) do not actually contradict Dr. Palmer's findings regarding Plaintiff's ability to
15 manage regular, uninterrupted, workplace attendance. *See supra* at 3. The court accordingly
16 rejects Defendant's argument that the error was harmless, as the opinions of the DDS physicians
17 regarding Plaintiff's limitations are squarely contradicted by that of Dr. Palmer. *See* Doc. No. 30
18 at 2.
19     Third, the ALJ erred in failing to evaluate whether Plaintiff's PTSD, generalized anxiety
20 disorder, and depressive disorder, individually or in combination, met or equaled the severity of
21 any listed impairment. *See* 20 C.F.R. § 416.920a(d)(2); *see also Keyser v. Comm'r Soc. Sec.*
22 *Admin.*, 648 F.3d 721, 727 (9th Cir. 2011) ("If your mental impairment(s) is severe, we will then
23 determine if it meets or is equivalent in severity to a listed mental disorder") (citing 20 C.F.R. §
24 404.1520a(d)(2), the Social Security Disability equivalent of § 416.920a(d)(2)). Where the ALJ
25 has found a severe medically determinable impairment at Step Two of the sequential analysis, "all
26 medically determinable impairments must be considered in the remaining steps of the sequential
27 analysis." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "In determining whether a claimant
28 equals a listing under step three . . . the ALJ must explain adequately his evaluation of alternative

1  tests and the combined effects of the impairments." *Celaya v. Halter*, 332 F.3d 1177, 1182 (9th
2  Cir. 2003) (given the potential effect of obesity on the plaintiff's other impairments, the ALJ had a
3  responsibility to consider their interactive effect in determining whether she met or equaled a
4  listing even though she did not meet the listed criteria for obesity). Defendant argues that any
5  error was harmless because the paragraph B criteria are identical for listings 12.04, 12.06 and
6  12.08. Doc. No. 23 at 6. Given the court's finding that the ALJ's paragraph B findings were not
7  supported by substantial evidence, Defendant's harmless error argument is unavailing.

### C. The ALJ Did Not Commit Reversible Error At Step Five.

9  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform
10 some other work that exists in significant numbers in the national economy, taking into
11 consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. § 416.920(f).
12 To determine that this work exists, an ALJ may properly rely on the testimony of a vocational
13 expert. *Tackett*, 180 F.3d at 1099-1101.
14 Here, the ALJ asked a vocational expert at the hearing to consider someone of Plaintiff's
15 age, education, and background, who had no physical restrictions but was restricted to work that
16 was very simple, routine, one and two-step tasks, very limited interaction with the general public,
17 and "no type of work with any co-workers." AR 73-74. She then asked the VE to give
18 representative examples of work this individual could perform. The VE identified a number of
19 positions that "do required limited interaction with others, but . . . very minimal. . . . Someone
20 who works on their own, does the work on their own based upon what's available to them." AR
21 74. Because these jobs were found in sufficient numbers in the national economy, the ALJ found
22 that Plaintiff was not disabled. AR 40. Although the ALJ did not, during the hearing, ask the
23 expert whether his testimony conflicted with the DOT, the ALJ noted in her decision that she
24 "determined that the vocational expert's testimony is consistent with the information contained" in
25 the DOT. AR 40.
26 Citing *Massachi v. Astrue*, 486 F.3d 1149, 1154 (9th Cir. 2007) and Social Security Ruling
27 00-4p, Plaintiff argues that the ALJ committed reversible error when she failed to ask the VE
28 whether his testimony conflicted with the DOT and, if so, whether there was a reasonable

11

1  explanation for the conflict. Doc. No. 19 at 7-8. Plaintiff, however, declined to identify any

2  conflict (or even argue that a conflict *actually* existed). *See id.*; *see also* Doc. No. 25 at 5.

3  Plaintiff's failure to show a conflict exists is fatal to his *Massachi* argument.[3] *See Fritz v. Comm'r

4  *of SSA*, 480 Fed. Appx. 886, 887 (9th Cir. 2012) (failure to ask VE whether testimony conflicted

5  with DOT was harmless where plaintiff did not show a conflict existed); *Stark v. Astrue*, 462 Fed.

6  Appx. 756 (9th Cir. 2012) (plaintiff's argument fails because he has not pointed to any apparent

7  inconsistency between testimony of VE and DOT); *see also May v. Comm'r of the SSA*, 2013 U.S.

8  Dist. LEXIS 77081, *44 (N.D. Cal. May 31, 2013) (where "nothing in the DOT descriptions" for

9  occupations VE testified about "show that these occupations require contact with the public or

10 more than limited interaction with co-workers," district court found that VE's testimony was

11 consistent with information contained in DOT when VE testified that these types of jobs "are

12 pretty much unsupervised" and "there probably would be hardly any interactions with other

13 people").

---

[3] Plaintiff declined to identify a conflict because the "burden of proof at Step Five is squarely upon the Commissioner." Doc. No. 25 at 5. On appeal, however, it is Plaintiff who bears the burden of showing that the error was harmful. *See McLeod v. Atrue*, 640 F.3d 881, 887-88 (9th Cir. 2011) (harmless error rule applies to Social Security context, and finding that, "despite the burden to show prejudice being on the party claiming error by the administrative agency, the reviewing court can determine from the 'circumstances of the case' that further administrative review is needed to determine whether there was prejudice from the error. Mere probability is not enough"); *McCullough v. Astrue*, 2013 U.S. Dist. LEXIS 128432, *12 (N.D. Cal. Sept. 9, 2013) (party claiming ALJ erred in failing to ask VE whether testimony consistent with DOT bears burden of showing error was not harmless); *Valencia v. Astrue*, 2013 U.S. Dist. LEXIS 41758, *54-*55 (N.D. Cal. Mar. 25, 2013) (in Social Security context, "the plaintiff, as the party attacking the agency's decision, normally bears the burden of proving that an error is harmful").

12

## CONCLUSION

For the reasons stated above, the court grants in part Plaintiff's motion for summary judgment and grants in part Defendant's motion for summary judgment. The matter is remanded to the SSA for further proceedings consistent with this opinion. On remand, the ALJ shall evaluate Plaintiff under all applicable mental disorder listings.

The clerk of the court is directed to close the case.

**IT IS SO ORDERED**.

Dated: October 25, 2013

NANDOR J. VADAS
United States Magistrate Judge